UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SHERRI MARTIN,

       Plaintiff,

v.                                 Case No:  2:15-cv-753-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____

## OPINION AND ORDER

Plaintiff Sherri Martin seeks judicial review of the denial of her claim for supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner").  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons discussed herein, the decision of the Commissioner is **AFFIRMED**.

### I.    Issues on Appeal[1]

Plaintiff raises four issues on appeal: (1) whether the Administrative Law Judge (ALJ) properly evaluated the severity of Plaintiff's mental impairment; (2) whether the ALJ properly considered Plaintiff's non-exertional limitations in assessing her Residual Functional Capacity ("RFC"); (3) whether the ALJ properly found that Plaintiff is capable of performing her past relevant work; and (4) whether

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) (holding that "a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

Plaintiff received a full and fair hearing before the ALJ.

## II.   Procedural History and Summary of the ALJ's Decision

On January 11, 2011, Plaintiff filed an application for SSI alleging that she became disabled and unable to work on February 1, 2010.   Tr. 137, 156.   Plaintiff alleged disability due to high blood pressure, fibromyalgia and depression.   Tr. 160. The application initially was denied on June 2, 2011 and upon reconsideration on August 10, 2011.   Tr. 98, 108.   Plaintiff requested and received a hearing before ALJ Larry J. Butler on May 15, 2013, during which she was represented by an attorney.   Tr. 51-79.   Plaintiff testified at the hearing.   *Id.*

On April 21, 2014, the ALJ issued a decision finding Plaintiff not disabled from January 11, 2011 through the date of the decision.   Tr. 36-44.   At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 11, 2011.   Tr. 38.   At step two, the ALJ determined that Plaintiff has the following severe impairments: fibromyalgia and hypertension.   *Id.*   At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."   Tr. 40.   The ALJ then determined that Plaintiff had the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b).[2]   *Id.*   Next, the ALJ found that Plaintiff is

---

[2] The regulation defines light work as work that involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and

capable of performing her past relevant work as a secretary/office worker because this work does not require the performance of work-related activities precluded by Plaintiff's RFC.   Tr. 42.   Alternatively, based on the Medical Vocational Rules (the "Grids"), the ALJ found that there are a significant number of other jobs in the national economy Plaintiff can perform.   Tr. 43.   As a result, the ALJ found that Plaintiff is not disabled.   Tr. 43.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on October 23, 2015.   Tr. 1-4.   Accordingly, the April 21, 2014 decision is the final decision of the Commissioner.   Plaintiff filed an appeal in this Court on December 30, 2015.   Doc. 1.   Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review.   Docs. 19, 20.

### III.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).   The Commissioner has established a five-step

---

pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities. If someone can do light work, [it is determined] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. § 416.920.

The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20

C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.*, 631

F.3d 1176, 1178 (11th Cir. 2011).   The claimant bears the burden of persuasion

through step four; and, at step five, the burden shifts to the Commissioner.   *Atha*,

616 F. App'x at 933; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).   The scope of

this Court's review is limited to determining whether the ALJ applied the correct

legal standards and whether the findings are supported by substantial evidence.

*McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v.*

*Perales*, 402 U.S. 389, 390 (1971)).   The Commissioner's findings of fact are

conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial

evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a

suspicion of the existence of the fact to be established, and such relevant evidence as

a reasonable person would accept as adequate to support the conclusion."   *Foote v.*

*Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer*

*v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence

is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit recently has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996)).   Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.   *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."   *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.   *Lacina v. Comm'r,* 606 F. App'x 520, 525 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir. 1971)).

## IV.   Discussion

### A.   Whether the ALJ properly evaluated the severity of Plaintiff's mental impairment

At step two, the ALJ acknowledged that Plaintiff has a medically determinable impairment of adjustment disorder.   Tr. 39.   The ALJ, however, determined that Plaintiff's adjustment disorder "does not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities."   *Id.*   In his evaluation, the ALJ considered the degree of limitations imposed by Plaintiff's mental impairments in four functional areas and found that Plaintiff has mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace. *Id.*   The ALJ also noted that Plaintiff has experienced no episodes of decompensation of extended duration.   *Id.*   Because Plaintiff's adjustment disorder causes no more than mild limitations in the three functional areas and Plaintiff has experienced no episodes of decompensation of extended duration, the ALJ found that Plaintiff's adjustment disorder is non-severe.   Tr. 40.

Plaintiff argues that in assessing the severity of Plaintiff's mental impairment, the ALJ applied a stricter standard than one required under the law.   Doc. 26 at 15-16.   Plaintiff specifically argues that the ALJ erred by not considering Plaintiff's global assessment of function ("GAF") score. [3]   *Id.* at 17.   The Commissioner responds that substantial evidence supports the ALJ's decision.   Doc. 27 at 5-7.

---

[3] GAF is a numeric scale (0 through 100) mental clinicians use to rate social, occupational and psychological functioning. See American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, 33 (4th ed. 1994) (DSM IV).

The Commissioner also asserts that she does not endorse GAF scores for use in the agency's disability programs, and GAF scores have no direct correlation to the severity requirements of the mental disorders listings.   *Id.* at 7-9.

At the second step in the sequential evaluation process, the ALJ determines whether the claimant has a severe impairment.   20 C.F.R. § 404.1520(a)(4)(ii). Plaintiff bears the burden of establishing that her impairments are severe.   *Bowen,* 482 U.S. at 146 n.5.   A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to do basic work activities.   20 C.F.R. § 404.1520(c).   "A non-severe impairment is a slight abnormality which has such a minimal effect on the individual that it could not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."   *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984).   "The ALJ must consider every impairment alleged."   *Gibson v. Heckler,* 779 F.2d 619, 623 (11th Cir. 1986).   When determining a claimant's RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions," not just those determined to be severe.   20 C.F.R. § 404.1545(a)(2); SSR 96-8p.   The ALJ is required to consider the combined effects of a claimant's alleged impairments and make specific, well-articulated findings as to the effect of the impairments and whether they result in disability.   *Walker v. Bowen,* 826 F.2d 996, 1001 (11th Cir. 1987).

Here, at step two, the ALJ considered the four broad functional areas (the "paragraph B criteria") set out in the disability regulations for evaluating mental

disorders and in section 12.00C of the Listing of Impairments (20 C.F.R., Part 404, Subpart P, Appendix 1) to determine that Plaintiff's medically determinable mental impairment of anxiety disorder does not cause more than minimal limitations in Plaintiff's ability to perform basic mental work activities and is therefore non-severe. Tr. 39-40.

The first functional area is activities of daily living.   Tr. 39.   The ALJ considered Plaintiff's report to the Social Security Administration ("SSA") on April 12, 2011 that she walks independently, dresses herself, bathes herself, and does her own personal grooming without assistance or reminders.   Tr. 174.   Plaintiff also noted that she does all the household chores for her home, prepares complex and simple meals as needed, runs errands, and goes grocery shopping as needed.   *Id.* Furthermore, Plaintiff reported that she leaves home twice a week to run errands and shop.   *Id.*   In addition, Plaintiff kept track of her own doctors' appointments and medication without assistance or reminders, receives food stamps and maintains her own account, handles the household finances without assistance, and purchases in a store without assistance.   *Id.*   Plaintiff does not allege at all that her daily activities have changed from what she reported.   Doc. 26 at 15-17.   The second functional area is social functioning.   Tr. 39.   The ALJ found that Plaintiff has mild limitation in this area because she is able to initiate and maintain friendships, run errands, and appear in public as necessary.   *Id.*

The next functional area is concentration, persistence, or pace.   *Id.*   Claudia Zsigmond, Psy.D., who evaluated Plaintiff at the referral of the Office of Disability

Determination, noted that Plaintiff watches television and cares for her dogs.   Tr. 255.   Dr. Zsigmond determined that Plaintiff has appropriate attention and concentration and no short-term or long-term memory impairment.   Tr. 254.   After considering Dr. Zsigmond's examination, the ALJ determined that Plaintiff has mild limitation in this area.   Tr. 39.   The fourth and final functional area is episodes of decompensation.   *Id.*   After reviewing the medical evidence, the ALJ determined that Plaintiff has experienced no episodes of decompensation.   *Id.*

Although the ALJ found that Plaintiff's mental impairment is non-severe, the ALJ determined that Plaintiff suffered from severe impairments (Tr. 38) and continued through the sequential evaluation to step five.   Tr. 40-43.   The Eleventh Circuit has noted that the finding of *any* severe impairment is enough to satisfy step two, "because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe."   *Burgin v. Comm'r of Soc. Sec.,* 420 F. App'x 901, 902 (11th Cir. 2011). Thus, even assuming the ALJ erred by concluding that Plaintiff's mental impairment is non-severe, that error was harmless because the ALJ considered all of her impairments, including those he deemed non-severe, when determining Plaintiff's RFC.   Tr. 40-42.

To the extent that the ALJ did not discuss Plaintiff's GAF score, it was at most a harmless error.   As the Commissioner correctly asserts, GAF scores are no longer endorsed for use in disability programs by the Commissioner and have no "direct correlation to the severity requirements of the mental disorders listings."   *Lacina,*

606 F. App'x at 527; Doc. 27 at 8-9.   Instead, Plaintiff must show the effect of her mental impairment on her ability to work.   *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005).   As a result, the Court finds that the ALJ properly evaluated the severity of Plaintiff's mental impairment.   Tr. 39.

> ### B.   Whether the ALJ properly considered Plaintiff's non-exertional limitations in assessing her RFC

Plaintiff argues that in evaluating her RFC, the ALJ failed to consider her non-exertional limitations imposed by her mental impairment and fibromyalgia.   Doc. 26 at 22-23.   The Commissioner asserts that substantial evidence supports the ALJ's RFC findings, and the ALJ properly considered Plaintiff's fibromyalgia in assessing Plaintiff's RFC.   Doc. 27 at 9-12.

When an impairment does not meet or equal a listed impairment at step three, as in this case, the ALJ will proceed to step four to assess and make a finding regarding the claimant's RFC based upon all the relevant medical and other evidence in the record.   20 C.F.R. § 404.1520(e).   Here, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1."   Tr. 40.

The ALJ then proceeded to assess and make a finding regarding the claimant's RFC.   Tr. 40-42.   The RFC is the most that a claimant can do despite her limitations.   *See* 20 C.F.R. § 404.1545(a)(1); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).   The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, medical signs

and laboratory findings, the effects of treatment, daily activities, lay evidence and medical source statements. *Id.* At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). Furthermore, the claimant's age, education, work experience and whether she can return to past relevant work are considered in determining his RFC. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)).

Contrary to Plaintiff' assertion, the ALJ considered the effect of Plaintiff's mental impairment and fibromyalgia on her daily activities in assessing Plaintiff's RFC. Tr. 40-41. The ALJ discussed Plaintiff's testimony that Plaintiff has fibromyalgia and also "feels depressed because she cannot get out and do things she enjoys." Tr. 41. The ALJ also noted that Plaintiff "takes antidepressants," and "has a history of cocaine abuse," but "has never been hospitalized for mental illness." *Id.*

Furthermore, as the Commissioner correctly argues, substantial evidence supports that Plaintiff's mental impairment does not impose limitations on Plaintiff's ability to work. Dr. Zsigmond, who evaluated Plaintiff on May 12, 2011, noted that Plaintiff's depression began in 2009 when she discovered that her husband was having an affair. Tr. 253. Dr. Zsigmond discussed that although Plaintiff had frequent crying episodes, anhedonia, avolition, social isolation and feelings of hopelessness "prior to medication," Plaintiff denied any history of suicidal ideation, and Zoloft[4] has helped Plaintiff. *Id.* Furthermore, Plaintiff reported that despite

---

[4] Zoloft is an antidepressant. Drugs.com, http://www.Drugs.com/zoloft.html (last

having abused cocaine from the mid-1990s until January 2010, she completed a court-mandated substance abuse program in April 2010 and continues to speak with her counselor to prevent relapse.   *Id.*

During Dr. Zsigmond's interview with Plaintiff, Plaintiff was appropriately dressed and groomed with good basic functioning and hygiene.   Tr. 254.   Plaintiff also was alert and well-oriented and did not exhibit any symptoms of psychosis such as hallucinations, delusions, or ideas of reference.   *Id.*   Plaintiff denied any compulsions or obsessions and did not show suicidal or homicidal tendencies.   *Id.*   Furthermore, Plaintiff provided a reliable personal history, demonstrating no severe short-term or long-term memory impairment.   *Id.*   In addition, Plaintiff had appropriate attention and concentration, an ability to complete simple math calculations, adequate judgment and insight into her difficulties, goal-directed, logical, and coherent speech and thought processes, no evidence of a formal thought disorder, no articulation problems, and a full range of appropriate affects.   Tr. 254-55.

With regard to her functioning and activities, Plaintiff reported during the evaluation that she is able to initiate and maintain friendships, and her social life is limited due to her pain and lack of funds, not due to her psychological issues.   Tr. 255.   Plaintiff also noted that she watches television, cares for her dogs, prepares simple meals, and does minimal housecleaning.   *Id.*   In efforts to lose her weight, Plaintiff stated that she tries to swim two to three times a week.   *Id.*   Based on her

---

visited, Mar. 16, 2017).

interview with Plaintiff, Dr. Zsigmond opined that Plaintiff's activities of daily living "are appropriate, however slow and painful." *Id.* As a result, although Dr. Zsigmond diagnosed Plaintiff with chronic adjustment disorder with depressed mood, nicotine dependence with physiological dependence, and cocaine abuse in early remission, Dr. Zsigmond concluded that Plaintiff's prognosis is fair with appropriate services and simply recommended that Plaintiff obtain health insurance and continue appropriate medical care. *Id.* As a result, Dr. Zsigmond did not opine that Plaintiff's mental disorder significantly limits Plaintiff's ability to work. Tr. 253-55. The ALJ considered Dr. Zsigmond's evaluation in assessing the severity of Plaintiff's mental disorder. Tr. 38. The ALJ also accorded great weight to her opinion in evaluating Plaintiff's RFC because it is consistent with the medical record as a whole. Tr. 42.

On May 21, 2011, Stanley Rabinowitz, M.D., conducted a consultative physical examination of Plaintiff. Tr. 257. Dr. Rabinowitz's examination revealed that Plaintiff was oriented as to time, place, and person, her memory was intact, and her appearance was appropriate. Tr. 259. Plaintiff also exhibited no behavioral difficulties during the interview with him, was able to relate, and appeared to be able to handle her own funds. *Id.* Similar to Dr. Zsigmond, Dr. Rabinowitz did not opine that Plaintiff's mental disorder causes any limitation on Plaintiff's ability to work. *Id.*

On June 1, 2011, Keith Bauer, Ph.D., completed a psychiatric review technique of Plaintiff and confirmed that she has non-severe impairments of affective disorders

and substance addition disorders.   Tr. 263.   He noted that Plaintiff did not report mental health sources on her application except Dr. Zsigmond's examination conducted on May 12, 2011.   Tr. 275.   Plaintiff again reported to Dr. Bauer that she had been on Zoloft for the past year, which has been helpful.   *Id.*   Furthermore, Dr. Bauer made a number of observations that indicated no restriction on Plaintiff's ability to perform work: Plaintiff drove herself to the examination, her memory was intact, she had appropriate attention and concentration, her activities of daily living were appropriate, she was able to maintain her personal care, she did household chores and prepared meals, she kept track of her medication without reminders or assistance, and she saw friends and family on a regular basis.   *Id.*   Based on his examination and interview with her, Dr. Bauer opined that she was "not psychotic," and neurocognitively intact.   *Id.*   He concluded that Plaintiff has "no significant limitations due to her adjustment [disorder.]"   *Id.*   On August 6, 2011, Arthur Hamlin, Psy.D., who reviewed all evidence in file, affirmed Dr. Bauer's examination. Tr. 277.

With regard to Plaintiff's fibromyalgia, a claimant's fibromyalgia is "characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months."   *Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 987 (11th Cir. 2015) (citing SSR 12-2p, 2012 WL 3017612 (July 25, 2012)).   Even if the record supports a diagnosis of fibromyalgia, "the mere diagnosis does not establish functional limitations." *Santin v. Comm'r of Soc. Sec.*, No. 5:15-cv-392-Oc-18PRL, 2016 WL 5478017, at *2 (M.D. Fla. Aug. 12, 2016) (citing

*Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005)), *adopted by* 2016 WL 5477094 (M.D. Fla. Sept. 27, 2016).   Instead, "longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of fibromyalgia" because the symptoms of fibromyalgia "can wax and wane so that a person may have 'bad days and good days.'"   *Laurey*, 632 F. App'x at 987-88 (citing SSR 12-2p, 2012 WL 3017612 (July 25, 2012)).   Furthermore, as noted, it is Plaintiff's burden to show the effect fibromyalgia on her ability to work.   *Wind*, 133 F. App'x at 690.

Here, as the Commissioner correctly argues, the record does not show that Plaintiff's fibromyalgia significantly limits Plaintiff's ability to work.   Doc. 27 at 12. David Baldinger, M.D., a rheumatologist, began examining Plaintiff on March 12, 2010.   Tr. 250-51.   During this visit, although he diagnosed Plaintiff with fibrositis, Plaintiff's neurological examination was stable, and there was no evidence of joint inflammation.   Tr. 250.   Dr. Baldinger examined Plaintiff again on March 31, 2010 and August 10, 2010, during which he also concluded that Plaintiff had no other signs of inflammation than diffuse muscle tenderness.   Tr. 248-49.   In fact, he noted on August 10, 2010 that Plaintiff's pain had some improvement with Tramadol[5] and Gabapentin.[6]   Tr. 248.

---

[5] Tramadol is a narcotic-like pain reliever used to treat moderate to severe pain. Drugs.com, https://www.drugs.com/tramadol.html (last visited, Mar. 16, 2017).

[6] Gabapentin is an anti-epileptic medication used to treat nerve pain.   Drugs.com, https://www.drugs.com/gabapentin.html (last visited, Mar. 16, 2017).

On November 8, 2012, Plaintiff saw Dr. Baldinger. Tr. 327. Dr. Baldinger noted that Plaintiff takes Ultram[7] and Gabapentin, which helps control Plaintiff's pain. *Id.* Plaintiff also denied having any chest pains and palpitations, cough, dyspnea at rest, nausea, vomiting, and diarrhea. *Id.* Plaintiff appeared well developed and nourished with no acute distress, and her neurological examination was normal. Tr. 328. Dr. Baldinger's medical records do not establish any limitations caused by fibromyalgia. The ALJ discussed these records in evaluating the severity of Plaintiff's impairments. Tr. 39.

On August 5, 2011, James H. Taylor, D.O., examined Plaintiff for Plaintiff's hypertension and body pain. Tr. 305. Dr. Taylor noted that Plaintiff has a history of body pain consistent with fibromyalgia, hypertension, and obesity and has seen Dr. Baldinger in the past. *Id.* Dr. Taylor diagnosed her with benign essential hypertension, morbid obesity, chronic major depression, and a risk of fibromyalgia. Tr. 306. He instructed her to follow up in one month. *Id.* On December 9, 2011, Plaintiff saw Dr. Taylor because of her boil and hypertension. Tr. 300. Plaintiff's physical examination during this visit, however, was normal, and Dr. Taylor did not note a treatment plan specific to Plaintiff's fibromyalgia. Tr. 300-01.

Plaintiff visited again Dr. Taylor on April 17, 2012. During this visit, although Plaintiff complained of her shoulder and hip pain and was taking Tramadol for her fibromyalgia, her physical examination was normal, and Dr. Taylor did not

---

[7] Ultram is narcotic-like pain reliever used to treat moderate to severe pain. Drugs.com, https://www.drugs.com/ultram.html (last visited, Mar. 16, 2017).

indicate any specific treatment plan for her fibromyalgia. Tr. 294-96. Furthermore, contrary to Dr. Taylor's opinion on July 17, 2012 that Plaintiff's chronic pain may be increasing her fibromyalgia symptoms, on July 27, 2012, Plaintiff denied any chills, chest pain or discomfort, dyspnea, nausea, vomiting, or urinary symptoms. Tr. 288.

Dr. Rabinowtiz, who examined Plaintiff on May 23, 2011, noted that Plaintiff's chief complaint was fibromyalgia. Tr. 257. Dr. Rabinowitz, however, found that despite complaining of being hurt "all over," and having a nonrestorative sleep pattern, depression, frequent headaches, and difficulty concentrating, Plaintiff denied fatigue and her memory was intact. *Id.* During this visit, Plaintiff also had clear and understandable speech, normal hearing, and intact speech and communication. Tr. 258. Dr. Rabinowitz found that Plaintiff walks normally without the help of any assistive device and could dress and undress without assistance. *Id.*

In addition, Plaintiff's physical examination was normal: all of Plaintiff's joints and spine had a full range of motion, and there was no evidence of active joint inflammation, joint deformity, instability, contracture or paravertebral muscle spasm. *Id.* She also had no cyanosis or clubbing and edema in her extremities, and her grip strength in both hands and digital dexterity were normal. *Id.* She had no difficulty getting on or off the examining table and was able to squat halfway down with moderate difficulty. *Id.* Plaintiff's cranial nerves II-XII also were grossly intact. *Id.* Plaintiff's light touch and reflex testing were normal. *Id.* Plaintiff's

motor strength testing on her upper and lower extremities bilaterally showed full normal motor strength.   *Id.*   Similarly, Plaintiff's cerebellar testing including finger to nose testing and heel to shin testing was within normal limits.   *Id.*   Plaintiff's tandem gait was intact.   *Id.*   The ALJ discussed Dr. Rabinowitz's examination in assessing the severity of Plaintiff's fibromyalgia.   Tr. 39.   The ALJ accorded great weight to Dr. Rabinowitz's opinion in evaluating Plaintiff's RFC because it is consistent with the medical record as a whole.   Tr. 42.

On September 12, 2011, Dr. Baldinger completed a fibromyalgia RFC questionnaire for Plaintiff.   Tr. 279-82.   He indicated that Plaintiff's fibromyalgia meets the American College of Rheumatology criteria, and her prognosis is poor.   Tr. 279.   He listed as Plaintiff's fibromyalgia symptoms: multiple tender points, numbness and tingling, nonrestorative sleep, chronic fatigue, muscle weakness, subjective swelling, frequent, severe headaches, Temporomandibular Joint Dysfunction, depression, and anxiety.   *Id.*   He opined that Plaintiff's fibromyalgia symptoms will interfere constantly with her attention and concentration needed to perform simple work tasks, and she cannot perform even "low stress" jobs.   Tr. 280. He noted that Plaintiff can walk only one block without rest or severe pain, sit and stand each for thirty minutes at one time, and sit and stand/walk for less than two hours in an eight-hour working day.   Tr. 281.   Dr. Baldinger further found that Plaintiff needs a job permitting her to shift positions at will from sitting, standing, or walking and to take unscheduled breaks during an eight-hour work day.   *Id.*

In addition, Dr. Baldinger indicated that Plaintiff can rarely lift or carry less than 10 lbs, 10 lbs, or 20 lbs and never lift or carry 50 lbs.   Tr. 282.   He also noted that she can never climb ladders, rarely stoop (bend), crouch, and climb stairs, and occasionally twist.   *Id.*   He further opined that Plaintiff has significant limitations in doing repetitive reaching, handling, or fingering.   *Id.*   Dr. Baldinger opined that Plaintiff is likely to be absent from work more than four days per month as a result of her fibromyalgia.   *Id.*   The ALJ considered and accorded little weight to Dr. Baldinger's September 12, 2011 opinion in assessing Plaintiff's RFC because substantial medical evidence, treatment notes, or objective observation did not support this opinion.   Tr. 42.   The ALJ noted that Plaintiff's medical evidence shows that Plaintiff was less limited than what Dr. Baldinger's September 12, 2011 opinion provided.   *Id.*   As a result, the review of the medical evidence shows that Plaintiff's fibromyalgia does not significantly limit Plaintiff's ability to work.

Based on the analysis above, the Court finds that substantial evidence supports the ALJ's RFC findings, and Plaintiff's mental disorder and fibromyalgia do not impose significant limitations on her ability to work.   *See Wind*, 133 F. App'x at 690.

### C.   Whether the ALJ properly determined that Plaintiff is capable of performing her past relevant work

The ALJ found that Plaintiff is capable of performing her past relevant work as a secretary/office worker because this work does not require the performance of work-related activities precluded by Plaintiff's RFC.   Tr. 42.   The ALJ explained that:

> [the] Dictionary of Occupational Titles sets forth that this job is generally performed at the sedentary exertional level, DOT #201.362-030.   In comparing [Plaintiff's RFC] with the physical and mental demands of this work, the undersigned finds that [Plaintiff] is able to perform it as actually and generally performed.

*Id.*   The ALJ also found that considering Plaintiff's age, education, work experience, and RFC, there are a significant number of other jobs in the national economy she is able to perform.   Tr. 43.

Plaintiff argues that the ALJ erred by naming two different job titles and yet, citing to only one DOT code.   Doc. 26 at 18.   Plaintiff asserts that although the work involves a composite of different DOT codes, the ALJ did not establish all of the necessary findings to support that Plaintiff actually can perform the composite of office worker/secretary.   *Id.*   According to Plaintiff, the state agency physicians found that Plaintiff is incapable of performing her past relevant work.   *Id.* at 20. Specifically, Plaintiff argues that the ALJ rejected Dr. Le's opinion that Plaintiff could not perform her past relevant work.   *Id.* at 21.   Lastly, Plaintiff contends that she did not work long enough as a secretary/office worker for it to constitute her past relevant work.   *Id.* at 23-24.

The Commissioner asserts that Plaintiff did not meet her burden of proving her inability to perform her past relevant work.   Doc. 27 at 12.   The Commissioner claims that contrary to Plaintiff's argument, Dr. Le did not opine that Plaintiff could not perform her past relevant work.   *Id.* at 16-17.   The Commissioner also argues that even if Plaintiff met her burden, she does not dispute the ALJ's finding that she could perform a significant number of jobs in the national economy.   *Id.* at 13.

Furthermore, the Commissioner responds that a secretary/office worker qualifies as Plaintiff's past relevant work.   *Id.* at 14-15.

First, as the Commissioner correctly argues, Dr. Le did not opine that Plaintiff could not perform her past relevant work.   *Id.* at 16-17.   On the contrary, on August 10, 2011, Loc Kim Le, M.D., reviewed all the evidence in the file and affirmed the single decision maker's[8] ("SDM") RFC assessment of Plaintiff conducted on June 1, 2011.   Tr. 97, 278.   Dr. Le's opinion completed the medical portion of the disability determination.   Tr. 278.   On June 1, 2011, the SDM opined that Plaintiff can lift and/or carry occasionally 20 pounds and frequently 10 pounds, stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, sit with normal breaks for a total of about six hours in an eight-hour workday, and push and/or pull unlimitedly.   Tr. 89.   The SDM also found that Plaintiff has no postural, manipulative, visual, communicative, or environmental limitations.   Tr. 90-92.

Based on her findings, the SDM noted that Plaintiff's symptoms are attributable to a medially determinable impairment, but the severity or duration of the symptoms is disproportionate to the expected severity or expected duration on

---

[8] Although a single decision maker is not an acceptable medical source and her opinion is not entitled to any weight or consideration, the ALJ may consider the report prepared by Dr. Le.   *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); SSR 96-6p.   Dr. Le reviewed and affirmed the SDM's findings after reviewing the record.   Tr. 278.   *See Warren v. Astrue*, 830 F. Supp.2d 1369, 1272-73 (rejecting a claim that ALJ erred by giving weight to the opinion of the SDM because a subsequent RFC assessment was performed by a medical consultant with "virtually indistinguishable findings"); *Patterson v. Astrue,* 2011 WL 1790192, *5 (M.D. Fla. 2011) (holding that "while [the SDM] was not a doctor, his opinion was subsequently concurred in by someone who is" and thus reversal was not warranted).

the basis of Plaintiff's medically determinable impairments.   Tr. 93.   The SDM indicated that the severity of the symptoms and its alleged effect on function are not consistent with the total medical and non-medical evidence including statements by Plaintiff and others, observations regarding activities of daily living, and alterations of usual behavior or habits.   *Id.*   Dr. Le reviewed the evidence and affirmed this RFC assessment.   Tr. 278.   The ALJ gave great weight to the opinions of the state agency medical examiners, including that of Dr. Le, finding these opinions were consistent with the medical record as a whole.   Tr. 42.   As a result, the ALJ did not reject Dr. Le's opinion by concluding that Plaintiff could perform her past relevant work.[9]   Doc. 26 at 20-11; Tr. 42.

Next, Plaintiff argues that a secretary/office worker does not qualify as her past relevant work.   Doc. 26 at 23-24.   Plaintiff asserts that she earned in excess of $10,000 only in 2007 and could not have spent up to two years to learn her work.   *Id.*

Step four of the sequential evaluation process requires the ALJ to determine whether the Plaintiff's RFC allows him to perform any of her past relevant work.   20

---

[9] Plaintiff appears to argue that because Dr. Le's signature, along with the signature of a disability examiner, is on a state agency decision that noted Plaintiff was not disabled because she could perform other work in the national economy (Tr. 97), Dr. Le was opining that Plaintiff could not perform her past relevant work.   Doc. 26 at 20-21.   Thus, the argument goes, because the ALJ found Plaintiff *could* perform her past relevant work, he was rejecting, without explanation and contrary to the regulations, Dr. Le's opinion that she could perform "other work."   *Id.* at 21.   Plaintiff's argument is without merit.   As discussed, in affirming the RFC Dr. Le opined that Plaintiff could perform light work, and the ALJ afforded his opinion great weight.   Tr. 42, 89-95, 278.   Also, Dr. Le was making findings of fact about the medical issues, not the vocational issues such as whether Plaintiff can perform her past work.   *See* 20 C.F.R. § 416.927(e)(1)(i) (describing role).   Finally, as noted by the Commissioner, these two findings – that a claimant can perform other work and can perform past relevant work – can be consistent when, as here, the claimant's RFC allows for the performance of both.   Doc. 27 at 16.

C.F.R. § 416.920(a)(4)(iv).    Plaintiff bears the burden of showing that her past work

experience is not past relevant work.    *Barnes*, 932 F.2d at 1359.    Past relevant work

is defined as, "work that you have done within the past 15 years, that was substantial

gainful activity, and that lasted long enough for you to learn to do it."    20 C.F.R. §

416.960(a)(1).    "Substantial gainful activity is work activity that is both substantial

and gainful."    20 C.F.R. § 416.972.    Substantial work activity involves doing both

mental and physical activities.    20 C.F.R. § 416.972(a).    Work may be "substantial"

even "if it is done on a part-time basis or if you do less, get paid less, or have less

responsibility than when you worked before."    20 C.F.R. § 416.972(a).    Work is

considered "gainful" if it is the kind of work that is typically done for pay or profit,

even if the profit is not realized.    20 C.F.R. § 416.972(b).

Earnings show that the claimant engaged in substantial gainful activity if a

claimant's monthly earnings averaged more than:

> the larger of the amount for the previous year or an amount adjusted for
> national wage growth, calculated by multiplying $700 by the ratio of the
> national average wage index for the year 2 calendar years before the
> year for which the amount is being calculated to the national average
> wage index for the year 1998.

20 C.F.R. § 404.974(b)(2)(ii).    Regarding a non-blind person, the SSA recognizes as

the monthly substantial gainful activity amounts: for 2005, $830 per month; for 2006,

$860 per month; for 2007, $900 per month; for 2008, $940 per month; for 2009, $980

per month; and for 2010, $1,000 per month.    Substantial Gainful Activity, Social

Security, https://www.ssa.gov/oact/cola/sga.html (last visited, Mar. 17, 2017).

Here, the Court finds that a secretary/office worker qualifies as Plaintiff's past relevant work.   During the hearing before the ALJ, Plaintiff testified that she worked as an office worker, doing secretarial work for her husband's tree servicing company from January 2005 to February 2010.   Tr. 55, 62, 166.   On her application, Plaintiff indicated that she earned approximately $30,000 per year by working as an office worker.   Tr. 161.   In fact, during the hearing before the ALJ, Plaintiff noted that she earned more than $30,000 per year from her job with the tree servicing company.   Tr. 69.

Plaintiff's paperwork and testimony show that she made at least $2,500 per month from January 2005 to February 2010, far exceeding the basic monthly substantial gainful amounts required by the SSA.   Substantial Gainful Activity, Social Security, https://www.ssa.gov/oact/cola/sga.html (last visited, Mar. 17, 2017). The length of her work experience also contradicts her own argument that she had less than two years to learn the work as a secretary/office worker.   Doc. 26 at 24. As a result, based on Plaintiff's length of time engaged in and income derived from her work as an officer worker/secretary, the Court finds that she engaged in substantial gainful activity.   20 C.F.R. §§ 416.960(a)(1), 404.974(b)(2)(ii).

In light of her testimony, Plaintiff's argument that the only year her annual income exceeded $10,000 has no merit.   *Id.*   Plaintiff's argument is based on her reported income to the government.   Tr. 151.   Plaintiff, however, testified before the ALJ that she did not receive a paycheck when she worked for her husband's company because she was self-employed.   Tr. 55.   For a self-employed person, the regulation

does not consider a claimant's income alone because "the amount of income [a claimant] actually receive[s] may depend on a number of different factors, such as capital investment and profit-sharing agreements." 20 C.F.R. § 416.975(a). Based on the analysis above, the Court finds that a secretary/office worker qualifies as Plaintiff's past relevant work because is it the "work that [she] ha[s] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it." 20 C.F.R. § 416.960(a)(1).

Lastly, Plaintiff argues that the ALJ erred by classifying her past relevant work under a single DOT code, although her job involves two composite jobs, the secretary and the office worker. Doc. 26 at 18. Furthermore, according to Plaintiff, the ALJ did not make all of the necessary findings to show that Plaintiff actually could perform the jobs. *Id.* Contrary to Plaintiff' argument, however, Plaintiff, not the ALJ, must show that she could not perform her past relevant work as it is generally performed in the national economy as well as how she actually performed it. Doc. 27 at 12-13; SSR 82-61; SSR 82-62; *Barnes*, 932 F.2d at 1359.

Furthermore, even if the ALJ erred by finding that Plaintiff can perform her past relevant work as actually and generally performed, the error was not prejudicial. Tr. 43. If "a claimant proves that she can no longer perform her past relevant work, the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). Here, although the ALJ found that Plaintiff is capable of performing her past relevant work, the ALJ

proceeded to find that given Plaintiff's age, education, work experience, and RFC, there are a significant number of other jobs in the national economy Plaintiff also can perform.   Tr. 43.

Nonetheless, Plaintiff argues that the ALJ erred in evaluating her non-exertional impacts on her ability to work because he did not call for a vocational expert ("VE").   Doc. 26 at 19-20.   In contrast, the ALJ may satisfy his burden at step five by relying on the Grids rather than calling for a VE to testify if the ALJ determines that the claimant is capable of performing a full range of work at a given level of exertion or that the claimant's non-exertional limitations do not significantly limit basic work skills.   *Jones*, 190 F.3d at 1229.   Here, the ALJ properly relied on the Grids instead of calling for a VE because the ALJ found that Plaintiff is capable of performing a full range of light work, and as noted, Plaintiff's non-exertional limitations imposed by her mental disorder and fibromyalgia do not significantly limit her basic work skills.   Tr. 39, 41-42; *Id.*   As a result, even if the ALJ erred by concluding that Plaintiff can perform her past relevant work, that error was not prejudicial.   *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).   Based on the above reasons, the Court finds that substantial evidence supports the ALJ's findings at step four.   Tr. 42-43.

D.   *Whether Plaintiff received a full and fair hearing before the ALJ*

Plaintiff argues that the ALJ here believed and acted contrary to the SSA's rules, regulations, and procedures, resulting in the SSA's disciplinary proceedings

against the ALJ and prejudice and bias against Plaintiff.    Doc. 26 at 11-13.
Plaintiff asserts that due to the ALJ's personal beliefs against the SSA, this case
requires a remand to a new ALJ.    *Id.* at 13.    Plaintiff also claims that the SSA's
disciplinary proceedings against the ALJ involves Plaintiff's counsel.    *Id.* at 15.
The Commissioner responds that Plaintiff does not demonstrate the ALJ's actual bias
against her.    Doc. 27 at 18.    On the contrary, according to the Commissioner, the
review of the case shows that Plaintiff's receipt of a full and fair hearing before the
ALJ here.    *Id.* at 18-19.

The ALJ must "not conduct a hearing if he or she is prejudiced or partial with
respect to any party or has any interest in the matter pending for decision."    *Jarrett
v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 874 (11th Cir. 2011) (citing *Miles v. Charter*,
84 F.3d 1397, 1400 (11th Cir. 1996)).    If a claimant believes that "a particular ALJ
will not provide a fair hearing, she must notify the ALJ at the earliest opportunity."
*Id.* (citing 20 C.F.R. § 404.940).    If the ALJ refuses, then the claimant may raise this
issue before the Appeals Council.    *Id.* at 874-75.    To merit remand on the basis of
the ALJ's bias, the court must find evidence of bias or unfair treatment by the ALJ.
*See id.* at 875.    The claimant bear the burden to allege any specific instances of the
ALJ's bias in her case.    *See id.*

Here, as the Commissioner accurately argues, Plaintiff does not present any
specific instances of the ALJ's bias against her here.    Doc. 26 at 11-15; *See id.*
Instead, Plaintiff only alleges the ALJ's general beliefs and acts against the SSA's
rules and procedures without showing his specific acts of bias against her in this

matter. Doc. 26 at 11-15. Furthermore, as noted, the Court's review of the ALJ's decision shows that the ALJ properly followed the rules and procedures and analyzed Plaintiff's evidence on the record in rendering his decision.

In addition, in support of her arguments, Plaintiff cites to the cases issued by this Court, misinterpreting the propositions for which the cases stand. Doc. 26 at 14-15. Specifically, Plaintiff argues that in these cases, the Court did not order re-hearing by a new ALJ because the ALJ Butler's lawsuit commenced only after the ALJ issued his decisions. *King v. Comm'r of Soc. Sec.*, No. 2:14-cv-341-FtM-CM, 2015 WL 5234318, at *9 (M.D. Fla. Sept. 8, 2015); *Ward v. Comm'r of Soc. Sec.*, No. 2:14-cv-419-FtM-CM, 2015 WL 5736177, at *7 (M.D. Fla. Sept. 29, 2015). Plaintiff asserts that in other instances, the Court ordered re-hearing before a new ALJ instead of ALJ Butler in order to avoid any appearance or risk of actual bias or prejudgment. *Hill v. Comm'r of Soc. Sec.*, No. 2:14-cv-708-FtM-CM, 2016 WL 1253579, at *10 (M.D. Fla. Mar. 31, 2016); *McCann v. Comm'r of Soc. Sec.*, No. 2:14-cv-265-FtM-CM, 2016 WL 1253576, at *11 (M.D. Fla. Mar. 31, 2016).

In all of the four cases, *King*, *Ward*, *Hill*, and *McCann*, however, the Court reversed the ALJ's decisions because substantial evidence did not support the ALJ's decisions, not because of the ALJ's bias against the plaintiffs. *King*, 2015 WL 5234318, at *9; *Ward*, 2015 WL 5736177, at *7; *Hill*, 2016 WL 1253579, at *10; *McCann*, 2016 WL 1253576, at *11. Only after finding remand appropriate on other grounds, the Court in *Hill* and *McCann* ordered re-hearing before a new ALJ on remand to avoid any appearance or risk of actual bias or prejudgment because ALJ

Butler's disciplinary proceedings involved the plaintiff's counsel.   *Hill*, 2016 WL 1253579, at \*10; *McCann*, 2016 WL 1253576, at \*11.

In *King* and *Ward*, the Court did not even order re-hearing before a new ALJ because the plaintiffs had not "shown that ALJ Butler's lawsuit, filed after his opinion[s] in [these were] issued and which does not involve [the plaintiffs' cases,] resulted in actual bias."   *King*, 2015 WL 5234318, at \*9; *Ward*, 2015 WL 5736177, at \*7.   Here, unlike all of the four cases cited above, Plaintiff does not show grounds to merit remand or the ALJ's actual bias against her.   *Jarrett*, 422 F. App'x at 875. Hence, the Court will not order re-hearing before a new ALJ.   *Id.*

ACCORDINGLY, it is hereby

**ORDERED:**

1.      The decision of the Commissioner is **AFFIRMED**.

2.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 24th day of March, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record